*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2016 UT 31**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

DONALD D. GILBERT, JR.,
*Petitioner*,

*v.*

Third District Court Judges
PAUL G. MAUGHAN and ROBERT P. FAUST,
*Respondents.*

No. 20150664
Filed July 20, 2016

On Petition for Extraordinary Relief

Third District, Salt Lake
The Honorable Paul G. Maughan
The Honorable Robert P. Faust
No. 070902087

Attorneys:

Lynn O. Poulson, Lehi, for petitioner

Nancy J. Sylvester, Salt Lake City, for respondents

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUSTICE HIMONAS joined.

JUSTICE PEARCE, opinion of the Court:

¶1    This matter arises out of a dispute between the Utah Down Syndrome Foundation, Inc. (the Foundation) and a splinter group, the Utah Down Syndrome Association (the Association). Donald D. Gilbert, Jr., an attorney, represented the Association and a number of its founders—who were formerly officers and directors of the Foundation—in litigation between the two entities. In 2015, Gilbert filed this petition for extraordinary relief, challenging a 2008 district court judgment that ordered him to disgorge $30,000 taken from Foundation bank accounts to pay his attorney fees. Gilbert's petition

also challenges the district court's 2007 injunction that originally barred Gilbert's clients from paying him with Foundation funds, its order denying his 2010 motion to vacate the 2008 judgment, and its order denying his 2014 motion for relief from the 2008 judgment. We decline to grant extraordinary relief, and we deny Gilbert's petition.

## BACKGROUND

¶2   The Foundation is a nonprofit organization dedicated to improving the lives of individuals affected by Down syndrome. A dispute arose between the Foundation and some of its members (the Individual Defendants) over the Foundation's management. The Individual Defendants, who were officers and directors of the Foundation's Salt Lake and Utah County chapters, created the Association as a purportedly separate Down syndrome support organization. However, the Individual Defendants, acting as the Association, allegedly retained Foundation funds and property and continued to use the Foundation's trade names, 501(c)(3) tax-exempt status, and bank accounts.

¶3   In February 2007, the Foundation sued the Association and the Individual Defendants, alleging conversion, misappropriation, and breach of fiduciary duty.[1] The Foundation sought an accounting and an injunction requiring, among other things, the return of "all funds from the Utah County and Salt Lake County chapters of the Foundation." The Foundation moved for partial summary judgment, asking the district court to rule that the Association and the Individual Defendants could not act in the Foundation's name. The Foundation also asked the district court to enter an order restraining the Individual Defendants from accessing funds in the disputed bank accounts.

¶4   Neither the Association nor the Individual Defendants filed an opposition to the motion for partial summary judgment. On May 3, 2007, Judge Maughan entered an order granting the Foundation's

---

[1] In a previous action, Gilbert represented two of the Individual Defendants in an attempt to bring a derivative action against the Foundation's president. In that case, the district court ruled on summary judgment that the Individual Defendants lacked the authority to sue on behalf of the Foundation. *See Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 3 & n.2, 293 P.3d 241. That decision is not before us.

request for injunctive relief (the Injunction). The Injunction concluded that the Individual Defendants "do not have the authority" to act in the Foundation's name in any respect. The Injunction also required the Individual Defendants to return all Foundation funds and stated they were "restrained from accessing [the Foundation's bank accounts] or any [Foundation] funds." The Individual Defendants did not attempt to appeal the Injunction. On June 14, their counsel entered a notice of withdrawal.

¶5    On July 13, 2007, Gilbert filed a motion to intervene on behalf of the members of the Foundation's Utah and Salt Lake County chapters (the Intervenors),[2] which the district court granted. On September 21, the Foundation filed a motion for entry of judgment that asked, in part, for an order to show cause against Gilbert for failing to hand over some $11,000 in Foundation funds that Gilbert was allegedly holding in his trust account.[3] On September 26, Gilbert entered an appearance as counsel for the Individual Defendants and filed, on their behalf and on behalf of the Association, a motion to set aside the Injunction. On October 4, Gilbert filed a memorandum opposing the Foundation's motion for entry of judgment and order to show cause.

¶6    On December 21, 2007, the Foundation filed a motion for disgorgement. The Foundation alleged that the Individual Defendants, or those working in concert with them, had taken funds to pay Gilbert's attorney fees from the Foundation bank accounts that were subject to the Injunction. The motion argued that Gilbert had accepted these funds in violation of the Injunction and asked that Gilbert be ordered to return the funds to the Foundation. Gilbert opposed the disgorgement motion on behalf of the Intervenors.

---

[2] We see no relevant distinction between the Intervenors and the Individual Defendants for purposes of this opinion, and the intervention motion itself appears to have been a tactical effort to disassociate the county chapters from the Foundation and associate those chapters with the Association and the Individual Defendants. Nevertheless, we identify the Intervenors separately to match the pleadings filed below.

[3] These funds were apparently not fees paid to Gilbert for attorney services but were donations that he was holding while the parties litigated the question of who was entitled to them.

¶7   On February 21, 2008, Judge Faust determined that Gilbert's motion to set aside the Injunction was "not well-taken." On March 10, Gilbert appeared at a hearing on the disgorgement motion and argued against that motion on behalf of his clients. On March 11, Judge Faust entered a minute entry granting the Foundation's motion for entry of judgment and stating, "Any remaining issues reserved regarding the disgorgement of funds [are] also . . . granted in [the Foundation's] favor." On April 14, Gilbert filed a notice of withdrawal as counsel for the Individual Defendants and the Intervenors.

¶8   On May 16, 2008, the Foundation filed a second motion for disgorgement of funds, alleging that the Foundation had discovered another check that had been used to pay Gilbert with funds taken from the Foundation bank accounts. The second disgorgement motion asked for an order requiring Gilbert to return a total of $30,000, with pre and post judgment interest, and to pay attorney fees the Foundation had incurred in seeking disgorgement. On June 13, Judge Faust entered an "Order and Judgment" (Disgorgement Order) granting the Foundation's second disgorgement motion, granting judgment against Gilbert for $30,000, and awarding the Foundation attorney fees and interest. To date, Gilbert has not paid the Foundation as ordered.

¶9   Sometime prior to November 2010, Gilbert became aware that the Utah State Bar had received a complaint from a Foundation officer about Gilbert's failure to comply with the Disgorgement Order. In response, Gilbert filed a motion in the district court seeking to vacate the Disgorgement Order (the Motion to Vacate). The motion sought relief on Gilbert's behalf as a nonparty to the litigation between the Association and the Foundation. The motion argued that the district court had lacked personal jurisdiction to enter the Disgorgement Order against Gilbert because he was not a party to that action and had never been served with a summons and complaint. Gilbert argued that this rendered the Disgorgement Order void and freed him of any obligation to comply.

¶10   Judge Maughan denied the motion, ruling that the district court had possessed jurisdiction to enter the Disgorgement Order. Specifically, Judge Maughan ruled,

> The fact that [Gilbert] was not a party to this action is irrelevant. He is an attorney representing parties in this action and was clearly aware of the [Injunction] which was in place when he commenced representation.

4

> While the funds at issue were not formally frozen, they were clearly identified and earmarked for return to the [Foundation]. [Gilbert] had a clear duty to ensure that the funds he was receiving for attorney's fees did not come from [this] pool of funds, a duty which he violated. Indeed, it appears that [Gilbert] was fully aware of the source for his payments, but nevertheless accepted these funds.

Judge Maughan concluded that "[u]nder such circumstances, both [Gilbert] and the funds he received fell under [the district court's] continuing jurisdiction."

¶11 Gilbert attempted to appeal the district court's denial of the Motion to Vacate to this court. We held that, as a nonparty to the underlying litigation, Gilbert could not directly appeal the court's decision. *Utah Down Syndrome Found., Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, ¶ 1, 293 P.3d 241. We explained that our rules "require nonparties, whose interests are purportedly affected by a court order, to file a motion to intervene as a party in the district court or to file a petition for extraordinary writ with the appellate court."[4] *Id.* ¶ 15. We held that "[b]ecause [Gilbert] failed to seek intervention, his remaining option was to petition this court for extraordinary relief." *Id.* We also stated, "In cases where there is time to seek intervention, the claim for party status can be submitted to the district court in the first instance, rather than to the appellate court." *Id.* ¶ 22. Despite that instruction, Gilbert did not petition for extraordinary relief at that time, nor did he seek to intervene in the underlying litigation.

---

[4] Much of our caselaw speaks in terms of "extraordinary writs" rather than "extraordinary relief." The Utah Rules of Civil Procedure contemplate a party filing a petition for "extraordinary relief" rather than an "extraordinary writ." *See* UTAH R. CIV. P. 65B advisory committee note ("This rule effectively eliminates the concept of the 'writ' from extraordinary relief procedure. . . . The concept has been replaced with terms such as 'hearing order' and 'relief' that are more descriptive of the procedural reality."). In hopes of promoting readability, we will not alter quotations with a forest of bracketed phrases to purge the older terminology, but in so doing we do not mean to suggest that the old nomenclature is coming back in vogue.

¶12 In August 2014, over eighteen months after this court issued *Utah Down Syndrome Foundation*, Gilbert filed a motion in the district court seeking relief from the Disgorgement Order (Motion for Relief from Judgment). In addition to reasserting Gilbert's personal jurisdiction arguments, that motion relied upon a 2009 settlement agreement between the Foundation and the Individual Defendants (Settlement Agreement), which Gilbert argued released him from the Disgorgement Order as part of the parties' agreement. After a hearing, Judge Maughan denied the Motion for Relief from Judgment.

¶13 Despite this court's instruction in *Utah Down Syndrome Foundation,* Gilbert never sought to intervene in the action to gain a right of direct appeal. Instead, once the district court denied the Motion for Relief From Judgment, he filed this petition for extraordinary relief.[5]

### ISSUES AND STANDARD OF REVIEW

¶14 Gilbert's petition identifies five issues: (1) whether Judge Maughan violated the Code of Judicial Conduct by showing open bias and prejudice against Gilbert at the 2014 hearing on the Motion for Relief from Judgment; (2) whether Judge Maughan erred in denying the Motion for Relief from Judgment; (3) whether Judge Maughan exceeded the district court's jurisdiction and failed to comply with the law regarding injunctions when he entered the Injunction; (4) whether Judge Faust violated Gilbert's due process rights under the Utah and United States Constitutions when he entered the Disgorgement Order against Gilbert, when Gilbert was not a party to the action and was not named in the Injunction; and (5) whether Judge Maughan violated Gilbert's due process rights under the Utah and United States Constitutions when he denied the 2010 Motion to Vacate. Gilbert's arguments can be divided into two groups: first, those attacking the 2007 Injunction, the 2008 Disgorgement Order, and the denial of his 2010 Motion to Vacate; and second, those arising from the denial of his 2014 Motion for

---

[5] The Foundation received copies of the petition, response, and reply as the real party in interest, but it has not sought to intervene or otherwise respond. The Association and the Individual Defendants have not been served with the petition and related papers, and they have not sought to participate.

Relief from Judgment. This court has broad discretion to grant or deny extraordinary relief. *State v. Henriod*, 2006 UT 11, ¶ 20, 131 P.3d 232 ("[T]he decision to grant extraordinary relief lies within our discretion.").

**ANALYSIS**

¶15    Rule 65B of the Utah Rules of Civil Procedure allows a petition for extraordinary relief "[w]here no other plain, speedy and adequate remedy is available." UTAH R. CIV. P. 65B(a). A petition for extraordinary relief "is not a proceeding for general review, and cannot be used as such." *Anderson v. Baker*, 296 P.2d 283, 285 (Utah 1956). "Unlike a party filing a direct appeal, a petitioner seeking rule 65B(d) extraordinary relief has no right to receive a remedy that corrects a lower court's mishandling of a particular case." *State v. Barrett*, 2005 UT 88, ¶ 23, 127 P.3d 682.

¶16    In *State v. Barrett*, we outlined a number of nonexclusive factors a court may consider in deciding whether to grant a petition for extraordinary relief. *Id.* ¶ 24. These factors include "the egregiousness of the alleged error, the significance of the legal issue presented by the petition, the severity of the consequences occasioned by the alleged error, and additional factors." *Id.* However, "these factors are neither controlling nor do they wholly measure the extent of [a court's] discretion." *Snow, Christensen & Martineau v. Lindberg*, 2013 UT 15, ¶ 22, 299 P.3d 1058.

¶17    Gilbert argues that the alleged errors were both egregious and legally significant, and that the consequence—his ultimate disbarment from the practice of law for failing to comply with the Disgorgement Order—is severe. In opposition, Respondents argue that the issues are not legally significant because none of them are the subject of an ongoing debate in this court. *See State v. Henriod*, 2006 UT 11, ¶ 21, 131 P.3d 232 ("[T]he legal issue is significant, as demonstrated by the ongoing debate in the Supreme Court."). Respondents also argue that extraordinary relief is unavailable to Gilbert because he failed to pursue the remedy of seeking intervention and direct appeal.[6]

---

[6] Respondents concede that the alleged errors could be deemed egregious to the extent that Gilbert was denied due process, and they also concede that the loss of one's law license is a severe consequence.

¶18 We need not reach the merits of the parties' arguments, however, because we may, as *Barrett* recognized, consider additional factors that bear on the availability of extraordinary relief.[7] 2005 UT 88, ¶¶ 24–26; *see also, e.g., Cox v. Laycock*, 2015 UT 20, ¶ 20, 345 P.3d 689 (considering "the necessity of prompt resolution [of a primary-election question] in advance of the general election" in granting a petition for extraordinary relief); *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Lindberg*, 2010 UT 51, ¶ 24, 238 P.3d 1054 ("[T]he equitable doctrine of laches is available to dismiss untimely writs." (citation omitted)). Here, Gilbert's repeated and lengthy delays in challenging the Injunction, the Disgorgement Order, and the denial of his Motion to Vacate, without apparent justification or excuse, weigh decisively against granting extraordinary relief. Gilbert did not immediately seek to appeal the 2008 Disgorgement Order. Rather, he waited over two years before attacking that order by filing his Motion to Vacate. It was only upon the denial of the Motion to Vacate that Gilbert attempted to appeal, resulting in our 2012 decision in *Utah Down Syndrome Foundation, Inc. v. Utah Down Syndrome Ass'n*, 2012 UT 86, 293 P.3d 241.

¶19 In *Utah Down Syndrome Foundation*, we suggested that Gilbert could still challenge the Disgorgement Order and denial of his Motion to Vacate through a petition for extraordinary relief, notwithstanding his prior failure to seek intervention and direct appeal. *See id.* ¶ 15 ("Because [Gilbert] failed to seek intervention, his remaining option was to petition this court for extraordinary relief."). But rather than promptly seeking extraordinary relief, Gilbert waited until August 2015 to file this petition, allowing more than two-and-a-half years to elapse between our opinion and his renewed efforts to obtain relief.

---

[7] *State v. Barrett* contemplates a two-step analysis. *See* 2005 UT 88, ¶ 24, 127 P.3d 682. First, a petitioner must demonstrate that the district court abused its discretion. *Id.* Once the petitioner makes that showing, the "petitioner becomes eligible for, but not entitled to, extraordinary relief." *Id.* Second, the petitioner must demonstrate that the court should exercise its discretion to grant relief. *See id.* For the purposes of this opinion, we assume, without deciding, that Gilbert could clear the first hurdle and demonstrate that the district court abused its discretion in one or more of the rulings he challenges.

¶20 These repeated delays—and particularly the second one, after we instructed Gilbert how to proceed—weigh heavily against the grant of extraordinary relief. *Cf. Renn v. Utah State Bd. of Pardons*, 904 P.2d 677, 684 (Utah 1995) ("[P]etitions under [rule] 65B(e) for a writ of certiorari or mandamus should be filed within a reasonable time after the act complained of has been done or refused . . . ."). Indeed, the magnitude of the delay, coupled with the lack of apparent justification for that delay, overwhelms any of the *Barrett* factors that might otherwise have weighed in favor of granting Gilbert's petition.[8] Gilbert has twice allowed two years or more to elapse without attempting to bring the alleged errors before this court, by petition for extraordinary relief or otherwise. Further, there is no apparent justification or excuse for these delays. Under these circumstances, we deny the extraordinary relief that Gilbert seeks with respect to the 2007 Injunction, the 2008 Disgorgement Order, and the 2010 Motion to Vacate. *See Barrett*, 2005 UT 88, ¶ 24.

¶21 Gilbert's petition does not suffer from the same chronic delay with respect to the 2014 Motion for Relief from Judgment. We nevertheless reject that portion of the petition because Gilbert has not demonstrated that the ordinary judicial process did not provide him with a plain, speedy, and adequate remedy to challenge the order denying the Motion for Relief from Judgment. *See* UTAH R. CIV. P. 65B(a). In *Utah Down Syndrome Foundation*, we explained the procedure a nonparty should employ to challenge a court order:

---

[8] In *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Lindberg*, we concluded that laches barred a petition for extraordinary relief because the three-year delay in bringing the petition, without justification or excuse, "operated to the detriment of others." 2010 UT 51, ¶ 35, 238 P.3d 1054. Laches requires not just a lack of diligence but also "an injury resulting from that lack of diligence." *Id.* ¶ 27. Although it is possible to articulate the prejudice Gilbert's delay occasioned, we note the difference between a party asserting that laches should prevent the grant of relief and this court determining that undue delay weighs against the exercise of our discretionary jurisdiction. No showing of prejudice is needed when this court concludes that a party has unreasonably delayed a request for extraordinary relief. Of course, prejudice resulting from a delay may also weigh against the availability of extraordinary relief.

> In cases where there is time to seek intervention, the claim for party status can be submitted to the district court in the first instance, rather than to the appellate court. In those cases where such a motion cannot provide timely relief, a petition for extraordinary writ filed with the appellate court provides an adequate remedy in light of the appellate court's obligation to give due regard to principles of due process.

2012 UT 86, ¶ 22 (footnote omitted). Thus, when Gilbert filed his Motion for Relief from Judgment, he was on notice that he should seek intervention and a direct appeal if time permitted. Nothing in the record suggests that Gilbert lacked the time needed to accompany his Motion for Relief from Judgment with a motion to intervene. Had he done so, he would likely have attained formal party status and a direct appeal of the court's final order. But he chose to ignore this court's explicit instruction to seek intervention in favor of seeking extraordinary relief.

¶22    Gilbert defends his tactical decision by arguing that he did not want to intervene because doing so would have "defeated his argument that the District Court lacked *in personam* jurisdiction over him." He relies on language from the concurring opinion in *Utah Down Syndrome Foundation* stating that "[n]onparties claiming that the court lacks jurisdiction over them cannot be expected to voluntarily submit themselves to that jurisdiction—by moving to intervene—thereby laying waste to the very claim of error they wish to raise on appeal." 2012 UT 86, ¶ 34 (Lee, J., concurring). For this reason, Gilbert argues, treating his ability to intervene and pursue direct appellate relief as a plain, speedy, and adequate remedy that precludes extraordinary relief would "impose an unfair and improper burden" on him and "should be rejected."

¶23    We disagree with Gilbert for the same reason a majority of this court disagreed with him the last time he advanced this argument. In *Utah Down Syndrome Foundation,* we stated that a nonparty seeking intervention "can still raise personal jurisdiction as a defense, so long as he does it in his first pleading." 2012 UT 86, ¶ 22 n.11. It is only when an intervenor fails to raise that defense in an initial pleading that the defense is waived. *Id.*; *see also* UTAH R. CIV. P. 12(h) (describing the waiver of defenses). Because Gilbert could have preserved his personal jurisdiction defense by raising it in his initial pleading, we do not view eschewing intervention to preserve that argument as depriving him of a plain, speedy, and

10

adequate alternative to extraordinary relief with respect to review of the order denying the Motion for Relief from Judgment. With respect to the 2014 order, Gilbert possessed a plain, speedy, and adequate avenue to seek review of the district court's actions, and we deny his petition for extraordinary relief.

## CONCLUSION

¶24    Gilbert unreasonably delayed seeking extraordinary relief from the Injunction, the Disgorgement Order, and the denial of his Motion to Vacate. He also failed to pursue the plain, speedy, and adequate remedy of seeking intervention and direct appeal of the denial of his Motion for Relief from Judgment. We therefore deny Gilbert's petition for extraordinary relief.

––––––––––––––