**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

DONNA DROWN,

     Plaintiff - Appellant,

v.

UTAH STATE OFFICE OF
EDUCATION; BENJAMIN
RASMUSSEN; MURRAY CITY
SCHOOL DISTRICT; STEVEN HIRASE,

     Defendants - Appellees.

No. 18-4079
(D.C. No. 2:16-CV-01273-DB)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MORITZ**, and **EID**, Circuit Judges.
_____

Donna Drown, proceeding pro se, appeals from the district court's dismissal of

her lawsuit against the Utah State Board of Education (named as the Utah State

Office of Education) (the Board), the Board's employee Benjamin Rasmussen, the

Murray City (Utah) School District (MCSD), and MCSD's employee Steven Hirase.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# BACKGROUND

Drown was a sixth-grade teacher employed by MCSD. In the 2012-2013 school year, she had a student (B) who acted out. B was larger and stronger than Drown and would become enraged and violent without warning, sometimes flipping chairs and tables. B's behavior aggravated Drown's diagnosed Post-Traumatic Stress Disorder (PTSD). Although Drown informed school officials about B's behavior and her concern for other students, B remained in her class. When Drown told Superintendent Hirase that she was obliged to inform parents of a threat to their children's safety under Utah Code § 53A-13-302(6)(b),[1] he said she had misinterpreted the law and directed her not to notify parents.

In May 2013 when a substitute teacher was teaching Drown's class, B threw a chair at another student. As she anticipated missing several more days, Drown was concerned that B would continue to behave violently, and substitute teachers would not be able to protect the other students. Because of these concerns, she sent a letter home to parents warning of the unpredictable volatility of an unidentified student in the classroom.

MCSD immediately suspended Drown for sending the letter and then terminated her employment in July 2013. Drown successfully availed herself of post-termination process, however, and on or about February 1, 2014, MCSD reinstated her with backpay and removed the termination paperwork from her district

---

[1] Now Utah Code § 53E-9-203(6)(b).

personnel file. Drown continued to work for MCSD until she voluntarily resigned at the end of the 2015-2016 school year.

While Drown's termination proceedings and appeal were ongoing, the Board, acting through the Utah Professional Practices Advisory Commission, initiated an investigation based on a complaint from B's family. On or about May 20, 2013, the Board placed a "tag" regarding its investigation on Drown's file in the Computer Aided Credentials of Teachers in Utah System (CACTUS), an electronic database that education personnel throughout the state could access and review. The tag remained on Drown's CACTUS file throughout the investigation.

Although the Board's investigator recommended that Drown be given a private letter of warning, the Board chose a more severe sanction. Rasmussen, the Board's Director of Law and Professional Practices, issued a January 2, 2015, letter of reprimand for Drown's failure to follow Hirase's directive. The letter eventually was removed from the CACTUS database, but not Drown's paper professional licensing file.

Drown sued the Board, Rasmussen, MCSD, and Hirase under the Americans with Disabilities Act (ADA), the Rehabilitation Act, and 42 U.S.C. § 1983. She also sought extraordinary relief under Utah Rule of Civil Procedure 65B. After review of the defendants' motions for judgment on the pleadings and Drown's responses thereto, the magistrate judge recommended dismissing all of Drown's claims. Over Drown's objection, the district court adopted the magistrate judge's recommendations and dismissed her claims with prejudice.

## DISCUSSION

We review a dismissal on the pleadings de novo, applying the same standards as those applicable to a Fed. R. Civ. P. 12(b)(6) dismissal. *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009). Under these standards, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). Accordingly, a complaint is insufficient "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679 (brackets and internal quotation marks omitted).

As a pro se litigant, Drown is entitled to liberal construction of her filings. *Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019). But we will not act as her attorney, and we address only the claims she challenges on appeal. *See id.*

## I.     ADA Claims[2]

### A.     Claims Against State Defendants

Drown asserted a claim against the Board and Rasmussen (collectively, the State Defendants) under 42 U.S.C. § 12112, which prohibits a "covered entity" from

---

[2] The district court granted judgment to the defendants on Drown's Rehabilitation Act claims for the same reasons it had given for dismissing her ADA

4

discriminating against qualified individuals with disabilities.  The term "covered entity" refers to "employer, employment agency, labor organization, or joint labor-management committee."  *Id.* § 12111(2).  The district court dismissed this claim as to the State Defendants because they were not Drown's employer.

Drown acknowledges that she was employed by MCSD, but she asserts that in issuing the letter of reprimand, the State Defendants acted as agents of MCSD and therefore also qualify as her employer.  *See id.* § 12111(5)(A) (providing that the term "employer" includes an agent of an employer).  We cannot agree with Drown, however, that in undertaking the Board's independent disciplinary review of Drown's conduct, the State Defendants became agents of MCSD and therefore "covered entities" under § 12112 with regard to Drown.  We therefore affirm the dismissal of the § 12112 claims with regard to the State Defendants.

Drown further asserted a claim against the Board under 42 U.S.C. § 12132, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  The parties' pleadings and briefing focused on the "be excluded from participation in or be denied the benefits of" clause (the exclusion clause), and the district court concluded that Drown never was denied the benefits of the Board's

claims.  *See* 29 U.S.C. § 794(d) (adopting ADA standards for Rehabilitation Act claims).  On appeal, Drown does not challenge applying the same standards to the two sets of claims and does not separately address her Rehabilitation Act claims.

5

services and programs. On appeal, however, Drown argues that the parties and the court erred in not also analyzing the "be subjected to discrimination by any such entity" clause (the discrimination clause). She acknowledges that the parties, including her, focused on the exclusion clause. But she states that they were wrong to do so, and she asks that the court instruct the district court to dismiss this claim without prejudice so that she can re-plead under the discrimination clause.

Although Drown is entitled to liberal construction of her filings, she must also follow the same rules of procedure that govern other litigants, including constructing her own arguments. With Drown having titled her claim as a "[v]iolation of 42 U.S.C. § 12132 . . . . for denying Ms. Drown the benefits of the services, programs, or activities of [the Board]," R. at 29, it is not surprising that the Board, and then the court, focused on the exclusion clause rather than the discrimination clause. Drown did not correct any misapprehension of her claim, however, and before this court, she acknowledges that to now assert a discrimination claim she would have to amend her complaint. Although we afford some leniency to pro se litigants, particularly with regard to amendment, Drown's pro se status does not entitle her to now replead her claims.

Drown also complains that the district court did not cite any law when rejecting her claim under § 12132. A lack of citation, by itself, is not grounds for reversing the district court's decision. And to the extent that Drown appeals from the district court's rejection of this claim on the merits, we agree with the district court that Drown's allegations, both in her original complaint and in her filings in response

6

to the motions for judgment in the pleadings, fail to "nudge" her § 12132 claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (brackets and internal quotation marks omitted). We therefore affirm the dismissal of the § 12132 claim.

### B.    Claims Against School Defendants

Drown asserted claims under § 12112 against MCSD and Hirase (collectively, the School Defendants) based on their handling of Drown's complaints about B, her suspension and termination, and her reinstatement. The district court dismissed these claims as untimely. Drown's complaint specified that she had filed a charge with the Equal Employment Opportunity Commission (EEOC) on or about July 1, 2015. But the events regarding B, the suspension and termination, and the reinstatement all ended on or about February 1, 2014, which was more than 300 days before Drown filed the July 1, 2015, EEOC charge. *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1206 (10th Cir. 2007) (stating that for an ADA claim to be timely, a plaintiff must file an EEOC charge within 300 days of the alleged discrimination).

On appeal, Drown asserts that if she had been allowed to amend, she would have alleged that she also filed an earlier EEOC charge against the School Defendants on or about July 13, 2013. Thus, she submits, her ADA claims against the School Defendants were timely exhausted. It does not appear, however, that Drown ever informed the district court of this earlier EEOC charge, and we generally decline to entertain new arguments on appeal, *see Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-31 (10th Cir. 2011). Moreover, Drown does not allege that the

7

instant lawsuit (which she filed in 2016) was filed within 90 days of her receipt of a right-to-sue letter on the 2013 charge. *See Proctor*, 502 F.3d at 1206 (stating that a plaintiff must file suit within 90 days of receiving a right-to-sue letter). We therefore affirm the judgment in favor of the School Defendants on the ADA claims that were dismissed as not being timely exhausted.

## II. Section 1983 Claims

The district court rejected Drown's claims under § 1983 that the defendants violated her rights under the ADA and the Rehabilitation Act and her right to due process. The only part of the § 1983 decision that Drown challenges on appeal is the district court's determination that Rasmussen was entitled to Eleventh Amendment immunity from § 1983 claims. Drown does not contest that the State Defendants qualify as arms of the state, but she asserts that the district court erred in concluding that she had not identified any ongoing violation of federal law that would entitle her to proceed against Rasmussen under *Ex parte Young*, 209 U.S. 123 (1908).[3]

The Eleventh Amendment protects a state and its arms from suit without their consent. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Under *Ex parte Young*, however, a plaintiff may seek injunctive relief against a state officer, acting in his official capacity. 209 U.S. at 159. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment

---

[3] Because the *Ex parte Young* exception applies only to individual defendants, *see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993), Drown's prospective-relief argument applies only to Rasmussen.

bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (brackets and internal quotation marks omitted). But "the exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 146 (citation omitted).

Drown asserts the continued retention in her permanent file of a letter of reprimand that resulted from discrimination constitutes an ongoing violation of federal law, and her request to have the letter removed from the file is properly characterized as prospective relief. We agree with the district court, however, that these circumstances do not allow application of the *Ex parte Young* exception. *See Buchheit v. Green*, 705 F.3d 1157, 1159 (10th Cir. 2012) ("Because he is merely seeking to address alleged past harms rather than prevent prospective violations of federal law, we can only reasonably categorize such relief as retrospective.").

III.    **Claim for Rule 65B Relief**

Drown also sought relief against the State Defendants under Utah Rule of Civil Procedure 65B, which provides for "extraordinary relief" against certain uses of (or failures to use) state authority "[w]here no other plain, speedy and adequate remedy

9

is available." Utah R. Civ. P. 65B(a). The district court dismissed this claim on the ground that it was improperly brought and untimely.

The heading of one of Drown's appellate arguments ostensibly challenges the dismissal of the Rule 65B claim, but the assertions in the body of the argument seem to go more toward establishing that Drown timely exhausted her administrative remedies with regard to her ADA claims against the School Defendants. This argument fails to show that the district court erred in determining the Rule 65B claim was improperly brought and untimely. *See Gilbert v. Maughan*, 379 P.3d 1263, 1268-69 (Utah 2016) (rejecting Rule 65B claim for untimeliness and failure to show the lack of a "plain, speedy, and adequate remedy"). Accordingly, we affirm the dismissal of this claim.

## IV. Remaining Issues

During the briefing on the defendants' motions, Drown filed documents denominated as "counterclaims" and requested leave to amend. The magistrate judge treated her filings as responses to the defendants' motions. Drown complains that the magistrate judge did not address her request to amend or notify her that her request was not properly filed. But the district court did consider her allegations, concluding that amendment would be futile. We agree with the district court that Drown's additional allegations do not establish plausible claims for relief. *See Iqbal*, 556 U.S. at 678-79.

Drown also suggests that the district judge was biased, noting that statistics show that he allows non-pro se complaints to proceed more than three times as often

10

as pro se complaints.  It does not appear that Drown ever argued for recusal in the district court, however, and in any event, this argument does not adequately establish grounds for recusal, *see Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); *United States v. Cooley*, 1 F.3d 985, 993-94 (10th Cir. 1993) (stating that factors "which will not ordinary satisfy the requirements for disqualification" include "speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" and "prior rulings in . . . another proceeding, solely because they were adverse").

Finally, Drown requests this court's assistance in obtaining counsel who would not be conflicted from representing her because of ties to MCSD or the state.  She states that she is not seeking appointment of counsel for financial reasons, but simply needs assistance in locating counsel who would be willing and able to represent her. Even if the court were in a position to assist with such a request, which it is not, the request is moot because we are affirming the dismissal of her claims.

## CONCLUSION

The district court's judgment is affirmed.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

11