*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2019 UT 34**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In re DALLIN MARK DURBANO

DALLIN MARK DURBANO
*Petitioner*,

*v.*

UTAH STATE BAR
*Respondent*.

No. 20181017
Filed July 17, 2019

On Petition for Extraordinary Relief

Attorneys:

Dallin Mark Durbano, Douglas M. Durbano, Layton, for petitioner[1]

Elizabeth A. Wright, Salt Lake City, for respondent

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶ 1   Dallin Mark Durbano wants to be a member of the Utah Bar. After abandoning a request that he receive an accommodation for his Attention Deficit Hyperactivity Disorder, Durbano took the Bar Exam and fell just short of a passing score. He now brings this petition for extraordinary relief and asks us to order his admission by waiving one of the following Rules Governing the Utah State Bar:

---

[1] Douglas M. Durbano signed the petition for extraordinary relief. Dallin Mark Durbano elected to argue on his own behalf.

(1) rule 14-711(d) setting a minimum passing score for the Uniform Bar Examination of 270; (2) rule 14-703(a)(5) requiring a student applicant to pass the MPRE and the Uniform Bar Examination; or (3) rule 14-706(a) providing that an applicant who has a disability as defined by the Americans with Disabilities Act may request an accommodation and setting forth the requirements that the applicant must meet. Durbano also asks that if this court is not inclined to waive any of those rules, that we review his exam and admissions packet, evaluate his ability to practice law, and admit him to the Utah Bar.

¶ 2 Durbano has raised interesting and important questions about the way in which the Utah State Bar interacts with those requesting accommodation. And he has given us reason to think about ways in which the Bar can provide more transparent and responsive service to those seeking accommodation. But he has not convinced us that we should exercise our discretionary authority to grant the relief he seeks. Accordingly, we deny the petition.

## BACKGROUND

¶ 3 Dallin Mark Durbano suffers from Attention Deficit Hyperactivity Disorder (ADHD). A physician diagnosed Durbano when he was in law school. Durbano reports that the diagnosis was a revelation that explained struggles that he had dealt with during his educational career. His law school provided accommodation for his disability and his scholastic performance improved markedly.

¶ 4 Durbano graduated from law school in May 2018 and made plans to sit for the July 2018 Bar Examination in Utah. Durbano initially sought accommodation for the Bar Exam. The Utah State Bar (Bar) requires those seeking accommodation to provide evidence of their disability and need for accommodation. *See* R. GOVERNING UTAH STATE BAR 14-706(a). Among other things, the Bar's accommodation request form requires score reports and written verification of any accommodations received or denied for each of the following standardized tests that the applicant had taken—the SAT, ACT, GRE, MCAT, GMAT, LSAT, and MPRE. An applicant must also have his physician or other appropriate professional verify the diagnosis and recommend appropriate accommodation.

¶ 5   Durbano indicated in the Bar application that he has a disability for which he was requesting test accommodations.[2] He did not submit any supporting documentation with this request, however. Durbano asserts that he experienced difficulty in obtaining some of the documentation he was required to submit. For example, he claims that he was unable to acquire his SAT and ACT scores. Durbano explained that he called the College Board in attempt to locate his scores.[3] Additionally, he claims he was unable to secure a physician's evaluation because the physician who diagnosed him practices in California.

¶ 6   Durbano signed the "Declaration of Completion" and submitted the application on March 10, 2018. Signing the "Declaration of Completion" affirms that an applicant has submitted "all documents" the application requires and that the applicant attests to the accuracy of the information provided. The declaration also requires the applicant to acknowledge that he or she understands that if the application is missing any documentation, the Bar may reject it.[4]

¶ 7   Thereafter, the admissions administrator for the Bar emailed Durbano, notifying him that his Bar application indicated that he was requesting test accommodation, but that the Bar had not received any supporting documentation. The admissions administrator reminded Durbano that he would need to pay a late fee and upload his documentation if he still wanted the Bar to consider an accommodation request. She also informed him that he would need to submit an amendment to his application if he no longer intended to seek accommodation.

---

[2] The Bar application form indicated that a "test accommodation request will not be reviewed or granted if [the applicant] fail[s] to file the required forms and medical documentation." But elsewhere, the Bar application explains that "[t]he Bar will notify [the applicant] if [the Bar] need[s] additional information to process your accommodation request."

[3] The College Board administers the SAT, but not the ACT.

[4] The Declaration of Completion provides, "If, after conducting a preliminary review of my application, the Admissions Office discovers missing documentation, I will be subject to any of the following penalties: 1. Assessment of additional fees; 2. Rejection of my application with only a partial refund; or 3. Denial of my application with no refund."

¶ 8 Durbano responded, "I'll need to upload an amendment form because I wasn't able to find all the documentation (past test scores, etc[.]) required by the bar. How do I submit an Amendment form?" The Bar admissions administrator directed Durbano to the amendment form.

¶ 9 Durbano asserts that he feared his entire Bar application would be rejected if he did not submit the required documents for his accommodation request. To avoid the risk, he chose to rescind his accommodation request and take the Bar Exam without any accommodation. As part of his amendment, Durbano stated that "I have a disability requiring accommodation. However, I'm unable to find test scores from over 15 years ago. Thus, I'm obliged to update my response to 'no,'" not seeking an accommodation.

¶ 10 Durbano sat for the July 2018 exam. He achieved a score of 264, six points short of the minimum passing score of 270. Consistent with how he predicted he would fare without accommodation, he failed to complete the essay section.

¶ 11 Durbano reapplied to take the Bar Exam in February 2019 and again indicated that he was requesting a testing accommodation. But again he withdrew his request. And did so for the same reasons as before.

¶ 12 Durbano then filed this petition for extraordinary relief. Five days after filing the petition, he emailed the Bar:

> My reexamination application initially had a request for testing accommodation for my ADHD. However, as was the case in my July 2018 bar exam application, I am unable to produce many of the documents required by the application portal in order to even apply for those accommodations. As a result, I have amended my reexamination application, rescinding the request for accommodations . . . .

> However, I genuinely have a disability and need accommodations. The application guidelines and Rules Governing Admission make clear that the Admissions Office hasn't the power to grant a waiver of the rules/requirements. At least that's how I understand them.

> But I thought I'd at least try asking if there is any flexibility in the application requirements for persons with disabilities applying for disability

accommodations? Is there anyone I can speak to about this?

¶ 13   The admissions administrator responded:

You state that you are "unable to produce many of the documents required" to request accommodations. It would be helpful to know which documents you are referring to. We have many accommodation requests every exam and this is not a common complaint, so I would need to know what cannot be provided before I could provide any guidance. . . . The supplemental materials (such as scores, transcripts, etc.) are . . . standard, but they may or may not be relevant depending on the individual case and those few applicants who have trouble obtaining them usually contact me to find out what they can do or whether they are really necessary so we can come up with a solution.

¶ 14   The admissions administrator explained that the Bar requires the documentation to evaluate whether someone's "disability limits them 'substantially' when compared with the general population" and to "know the extent" of the impairment in order to assess what, if any, types of accommodations are appropriate. The admissions administrator also acknowledged that the Bar cannot waive the rules and noted that the rules set a deadline for making an accommodations request—a deadline which had now passed preventing the Bar from considering any updated request.

¶ 15   The admissions administrator then wrote:

It appears you have filed a petition [for extraordinary relief] with the Court; this may have been premature, as you have never used any of the administrative remedies available to you. The Admissions Office, who reviews accommodation requests for completeness, and the Test Accommodations Committee, which is tasked with making decisions on those requests, have never denied your request because no request was ever made. You withdrew it and the Admissions Office and the Test Accommodations Committee never had an opportunity to address and resolve any of the issues you were having.

Finally, the administrator identified the options still available to Durbano: "(1) withdraw for the refund and reapply for the next

exam, (2) pay the $100 transfer fee to transfer to the next exam, or (3) take the exam and then request accommodations the next time in the event of a failing result."

¶ 16  Durbano deferred his Bar application and did not take the exam in February 2019.

## ANALYSIS

¶ 17  "Petitions for extraordinary relief are governed by rule 65B of the Utah Rules of Civil Procedure." *Osborne v. Adoption Ctr. of Choice*, 2003 UT 15, ¶ 23, 70 P.3d 58. Rule 65B provides, in specified circumstances, that "[w]here no other plain, speedy and adequate remedy is available, a person may petition the court for extraordinary relief." UTAH R. CIV. P. 65B(a).

¶ 18  Durbano presses a number of ways that we could grant him the ultimate relief he wants: admission to the Utah State Bar. He primarily requests that we waive rule 14-711(d), which sets 270 as the minimum passing score of the Bar Exam. R. GOVERNING UTAH STATE BAR 14-711(d). Alternatively, Durbano requests that we waive rule 14-703(a)(5), which requires applicants to "successfully pass[] the MPRE and the Bar Examination," or rule 14-706, which governs testing accommodations. Finally, he asks that we simply admit him as a member of the Utah State Bar under our constitutional authority to manage the Bar. *See* UTAH CONST. art. VIII, § 4.

¶ 19  We conclude that Durbano has an adequate remedy with respect to rule 14-706 and deny that part of the petition on that basis. This petition is a proper vehicle to advance Durbano's other claims. But we are not persuaded that Durbano is entitled to the relief that he seeks.

### I. Durbano Has a Plain, Speedy, and Adequate Remedy With Respect to His Request That We Waive Rule 14-706, But Not for the Other Requested Relief

¶ 20  Rule 14-706(a) of the Rules Governing the Utah State Bar provides:

> An Applicant who has mental, physical, or cognitive disabilities as defined by the Americans with Disabilities Act ("ADA") may request test accommodations. The request, including all supporting medical documentation, shall be made in writing at the time of application in the format prescribed by the Bar.

The rule further states that the applicant must demonstrate that "she or he is disabled as defined by the ADA; and . . . the disability impacts her or his ability to take the Bar Examination; and . . . the accommodation requested is necessary to meet the limitation caused by the disability." *Id.* The rule then provides that the Test Accommodations Committee decides whether to grant an accommodation and, if it does, what an appropriate accommodation would be. *Id.*

¶ 21 A person displeased with the Test Accommodations Committee's decision may request review of that decision by the Bar's Admissions Committee. *Id.* 14-706(c); *see id.* 14-715(a)(1). And that committee's decision can be appealed to this court. *Id.* 14-715(e).

¶ 22 Durbano could have followed this path to advance his claim that he was entitled to an accommodation. That is, Durbano could have submitted a request for a testing accommodation, even if incomplete. And if denied, he could have requested that the Bar Admission's Committee review the Testing Accommodations Committee's decision. If again denied, he could have then appealed the Committee's decision to this court. Durbano disagrees and contends that proceeding down that route would have been futile.

¶ 23 Durbano correctly notes that petitioners are not required "to pursue a futile appeals process solely as a matter of form." *In re Anthony,* 2010 UT 3, ¶ 12, 225 P.3d 198. Durbano argues that it would be futile to submit an incomplete application and then appeal any decision of the Test Accommodations Committee because he is asking for a waiver of the rule and the Bar lacks the authority to waive rules. *See* R. GOVERNING UTAH STATE BAR 14-702(f). ("Neither the Bar nor its representatives has authority to waive any rule.").

¶ 24 But Durbano's complaint is not with the rule that allows the Bar to grant test accommodations in appropriate circumstances. His beef centers on how the Bar implements that rule. Put differently, no rule requires Durbano to submit his test scores and physician's verification. These are requirements the Bar imposes. And the Bar has the ability to adjust those requirements in appropriate circumstances. The only requirement that the rule places on the Bar is that it review testing accommodation requests made in writing at the time a Bar application is submitted. *See id.* 14-706.

¶ 25 Indeed, the admissions administrator suggested in her email to Durbano that the Test Accommodations Committee could be flexible with the documentation requirements listed in the Bar application form:

> The supplemental materials (such as scores, transcripts, etc.) are also standard, but they may or may not be relevant depending on the individual case and those few applicants who have trouble obtaining them usually contact me to find out what they can do or whether they are really necessary so we can come up with a solution.[5]

¶ 26  Simply stated, Durbano had a plain, adequate, and speedy avenue for the relief he seeks with respect to his request for an accommodation—submit an accommodations request. As a result, his request that we waive rule 14-706 is not the proper subject of a petition for extraordinary relief.[6]

--------

[5] Durbano's arguments suggest that the Bar could be more transparent in this process. If, as the admissions administrator suggested in her email, the Bar may conclude that some of the information it requests may not be "really necessary" in a particular case, it would be better for the Bar to make this plain as part of the application process and to not announce it on a case-by-case basis.

[6] Underlying Durbano's petition runs Durbano's concern that if he filed an incomplete request for accommodations, the State Bar would deny his entire application. Durbano bases that on the language in the "Declaration of Completion" that if "the Admissions Office discovers missing documentation" the applicant may face "[r]ejection of [their] application" or "[d]enial of [their] application." In addition, Durbano cites to language in the Bar application packet that an applicant "must provide the appropriate forms . . . with [a] completed application for admission or [an] accommodation request will be denied without review."

The Bar asserts that Durbano's fear that "his entire Bar application would be denied for failure to submit a complete request for accommodation" is "inaccurate:" "Acceptance of the [B]ar application is not contingent on the uploading of test accommodation forms. Only the test accommodation request is subject to denial if accommodation documentation is missing." And they contend that Durbano should have contacted them to seek assistance and that the Bar would have assisted him in finding a solution—either by directing him on how to obtain test scores or by urging him to submit what he had even if he could not obtain the scores.

We take the Bar at its word that it would not have rejected Durbano's entire Bar application based on an incomplete

(continued . . .)

¶ 27 In contrast, a petition for extraordinary relief is the mechanism for Durbano to press his remaining claims for relief. Only this court could waive rule 14-703(a)(5) requiring a passing score on the Bar Exam, waive rule 14-711(d) requiring a score of 270 on the Exam, or conduct an independent evaluation and admit him to the Utah Bar despite his not having passed the Bar Exam. And in contrast to Durbano's argument regarding rule 14-706 where waiver of that rule is not necessary for the relief he seeks, waiver of rules 14-703(a)(5) or 14-711(d) *is* necessary for the relief he seeks.

## II. Durbano Does Not Convince Us to Grant the Relief He Seeks

¶ 28 This court has broad discretion to grant or deny extraordinary relief. *See Gilbert v. Maughan,* 2016 UT 31, ¶ 14, 379 P.3d 1263. In the exercise of this discretion, we consider a variety of factors including "the nature of the relief sought, the circumstances alleged in the petition, and the purpose of the type of writ sought." *Osborne v. Adoption Ctr. of Choice,* 2003 UT 15, ¶ 23, 70 P.3d 58 (citation omitted) (internal quotation marks omitted); *see also Gilbert,* 2016 UT 31, ¶ 16 (discussing additional nonexclusive factors a court may consider).

¶ 29 Here, the relief Durbano seeks is remarkable in scope. All three of his remaining requests would require us to, in one form or

---

accommodation request. And we believe that the Bar would have worked with Durbano if he had understood the Bar admissions administrator's response as an offer to help when he contacted the Bar regarding his missing test scores.

The problem, however, is that Durbano could reasonably read the Declaration of Completion in the fashion that he did. And he could reasonably conclude that he risked losing his entire application because of an incomplete accommodation request. And to complicate matters further, the Bar admissions administrator's response to Durbano suggests a willingness to assist, but never explicitly offers assistance.

These issues could be avoided in the future if the Bar is more upfront about its ability to assist with questions and direct applicants to contact the admissions office if they need help or have difficulty with the request forms. In addition, a clarification to the Bar application form that an incomplete accommodation request form will not doom an otherwise complete admissions application could avert similar issues in the future.

another, set aside the long-standing and universally understood requirement that a law school graduate pass the Bar Examination if she wants to practice law in Utah. Although there is no set algorithm we employ to decide when extraordinary relief is warranted, it stands to reason that the more extraordinary the relief the petitioner seeks, the more compelling the showing of an entitlement to that relief should be.

¶ 30 Durbano's primary argument focuses on the difficulty Durbano faced in providing the information the Bar requires to assess whether an applicant is entitled to an accommodation and the form the accommodation will take. According to Durbano, "the testing accommodation requirements were so inordinately oppressive that he was prevented from applying for such." But the information he presents to support that contention does not paint the portrait of an insurmountable hurdle.

¶ 31 Durbano first complains that he was required to submit a history of scores from standardized tests along with proof of any testing accommodations provided. And he asserts that "after a diligent search, utilizing every practical resource available," he was unable to obtain his ACT or SAT scores.

¶ 32 When asked during oral argument about the steps he took to procure the records, Durbano reported that he placed a single phone call to the College Board. After learning his SAT score was not immediately available, he did not take further action, even though the administrator he spoke to informed him that he could request a manual archive search. And in response to a question seeking to clarify whether Durbano could not obtain his ACT scores because he did not take the ACT or because they were lost, Durbano replied that he "d[id not] recall."

¶ 33 Durbano's argument concerning the requirement that he obtain a physician's evaluation is similarly unpersuasive. Durbano argues that it was "not possible" for him to secure his physician's completed evaluation because his diagnosing physician "is currently located in Irvine, CA." During oral argument, Durbano admitted that he never asked his physician to fill out the form. And it is not at all apparent how distance alone would have prevented Durbano from obtaining the information from his physician. Nor is it obvious why Durbano could not have sought diagnosis from a local physician if distance were an obstacle.

¶ 34 Given the circumstances alleged in the petition and the nature of the relief he seeks, Durbano has not persuaded us to issue the writ he desires.[7]

¶ 35 Durbano next argues that we should either waive the rules that require an applicant to pass the Bar Examination or admit him to the Bar because "[s]trict adherence to the rules in [his] case would undermine [the Bar's] purpose of protecting the citizens of Utah." Durbano details his law school achievements, his community service, and his work as a legal intern and argues that these, among other things, demonstrate that he has the chops to be an attorney.

¶ 36 Even though Durbano's achievements are laudable, we are unconvinced that we should overturn the system we have in place—even on a one-time basis—for evaluating fitness to practice law in the state of Utah. We faced a similar question in *Spencer v. Utah State Bar*, 2012 UT 92, 293 P.3d 360. There, an attorney sought admission under rule 14-705, which, at the time, allowed admission to the Utah State Bar without taking the Utah Bar Examination if, among other things, the applicant had practiced "for at least three of the previous [five] years immediately preceding the date of the filing of the application." *Id.* ¶ 16 (alteration in original) (emphasis omitted) (citation omitted).

¶ 37 Spencer had more than sixteen years of practice as a member of the Idaho State Bar. *Id.* ¶ 3 But he had not actively practiced, because of a disability, for at least three of the previous five years, as the admission rule required. *Id.* ¶¶ 3–5. Spencer asked us to look past that and focus on his extensive experience and successful career. *Id.* ¶ 11. He argued that he had "achieved the skill and competence necessary to practice law" in Utah because of his "previous and extensive experience in Idaho." *Id.* (internal quotation

---

[7] At oral argument, Durbano argued, for the first time, that the accommodation request process is so "oppressive and discriminatory" that his disability prevents him from properly completing them without an accommodation. We do not, as a matter of fairness, address arguments that rear their heads for the first time in oral argument. *Porenta v. Porenta*, 2017 UT 78, ¶ 33, 416 P.3d 487.

But we are sympathetic to the concerns Durbano has raised and ask the Bar to examine the process for requesting an accommodation and explore whether the process can be improved so that we can better serve those whose disabilities might prevent them from completing the accommodation request.

marks omitted). He further argued that his "experience and qualifications demonstrate[d] that he [was] competent to immediately begin representing clients in Utah." *Id.*

¶ 38 We rebuffed Spencer's attempt to gain admission. In so doing, we noted that we did "not doubt that [] Spencer ha[d] accrued significant legal experience." *Id.* ¶ 16. And we noted that "[i]n some instances, the active practice requirement may prevent skilled, competent lawyers from being admitted to the Utah Bar on motion." *Id.* ¶ 17. But we reasoned that the requirement provided "a predictable, objective standard by which the Bar may review applications for admission." *Id.* We feared that if we were to depart from an objective standard, we would soon be required to "evaluate the credentials of every lawyer who seeks a waiver of the active practice requirement." *Id.* And we agreed with the Bar that if we were to undertake that process, we would "inevitably produce inconsistent results, [and] promote the appearance of unfairness." *Id.* (alteration in original) (internal quotation marks omitted).

¶ 39 The same logic adheres here. A Bar Examination with a set passing score promotes a predictable and objective system. If we grant Durbano's petition and admit him to the Bar, it is not difficult to foresee that we will soon be in the business of reevaluating the admission applications of others who fail to achieve a passing score. We understand that the examination process is not perfect, and that legitimately tough cases will live in the margins, but that is the price of a predictable and objective process. For these reasons, we deny Durbano's petition for extraordinary relief.

## CONCLUSION

¶ 40 Durbano has a plain, adequate, and speedy remedy to advance his claim that he should be granted an accommodation under rule 14-706 and his petition is denied with respect to that claim on that basis. Durbano lacks such a remedy with respect to rules 14-703(a)(5) and 14-711(d), and with respect to his request that he be admitted to the Bar under our constitutional authority to oversee the practice of law. His petition is therefore an appropriate mechanism to advance those claims. But we deny the petition on its merits because Durbano has not shouldered his burden of demonstrating that we should grant him the relief he seeks.