*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 38**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

RALPH LEROY MENZIES,
*Appellant.*

RALPH LEROY MENZIES,
*Petitioner,*

*v.*

HONORABLE MATTHEW BATES,
*Respondent,*

STATE OF UTAH,
*Respondent and Real Party in Interest.*

Nos. 20250639, 20250932
Nos. 20250797, 20250929

Heard August 21, 2025
Filed August 29, 2025

On Direct Appeal
and
Petition for Extraordinary Relief

Third District Court, Salt Lake County
The Honorable Matthew Bates
No. 031102598

Attorneys:

Derek E. Brown, Att'y Gen., Daniel W. Boyer, Ginger Jarvis,
Michael D. Palumbo, Asst. Solics. Gen., Thomas B. Brunker,
Spec. Asst. Solic. Gen., Salt Lake City, for appellee/respondent
and real party in interest

Eric Zuckerman, Salt Lake City, Jon M. Sands, Lindsey Layer, Jennifer Moreno, Sonia Fleury, Phx., Ariz., for appellant/petitioner

───────────

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which JUSTICE PETERSEN, JUSTICE HAGEN, JUSTICE POHLMAN, and JUDGE RUSSELL joined.

Having recused himself, ASSOCIATE CHIEF JUSTICE PEARCE does not participate herein; DISTRICT COURT JUDGE RONALD G. RUSSELL sat.

───────────

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1 Ralph Leroy Menzies was convicted of first-degree murder in 1988 and sentenced to death. In early 2024, after Menzies exhausted his appeals, the State sought an execution warrant. Months earlier, he had been diagnosed with vascular dementia. Vascular dementia is a progressive neurocognitive disorder that worsens over time and, among other things, results in memory loss, cognitive impairment, and declines in daily mental and physical functioning. When the State sought the execution warrant, Menzies responded with a petition alleging that his vascular dementia rendered him incompetent to be executed under the Eighth Amendment to the United States Constitution.[1]

¶2 The United States Supreme Court has held that a person is not competent to be executed if the person cannot "reach a rational understanding of the reason for his execution."[2] The Court has explained that this is so when a person's "mental state is so distorted by a mental illness" or his "concept of reality is so

───────────

[1] *See Ford v. Wainwright*, 477 U.S. 399, 409–10 (1986); *Panetti v. Quarterman*, 551 U.S. 930, 959 (2007); *Madison v. Alabama*, 586 U.S. 265, 269 (2019). The Eighth Amendment's protections apply to the states under the Fourteenth Amendment. *Panetti*, 551 U.S. at 934–35.

[2] *Madison*, 586 U.S. at 268 (cleaned up); *see also Panetti*, 551 U.S. at 958.

impaired" that he "cannot grasp . . . the link between his crime and its punishment."[3]

¶3    Menzies was evaluated by several experts. Six months after an evidentiary hearing, the district court issued an order finding it uncontested that Menzies had vascular dementia. Scans showed his brain experienced microhemorrhages, was shrinking in a manner consistent with vascular dementia, and had tissue damage, particularly in the areas critical for memory, executive functioning, and decision-making. Frequent falls, episodes of lost consciousness, and hypoxic events (meaning episodes of impaired breathing) were also symptomatic of vascular dementia. The court heard medical testimony that hypoxic events could also "make this worse very quickly." Two experts who evaluated Menzies over time, with several months in between evaluations, noted a downward decline in his neurocognitive function between evaluations. But the court ultimately concluded that despite this evidence Menzies was competent to be executed (first competency order). Menzies appealed that order and asked the district court to stay his execution while his appeal was pending. The district court denied that request.

¶4    One month later, Menzies filed a petition to reevaluate his competency. He attached reports from two neurologists who had conducted new evaluations and a declaration from a correctional case manager for the Utah Department of Corrections who had worked directly with Menzies in the preceding months. The neurologists concluded that, compared to prior evaluations, Menzies exhibited progressive declines, a significant deterioration in his cognitive abilities, several new abnormalities, and a new inability in his understanding of his death sentence, even when cued to give the correct answers. Menzies also pointed to a severe hypoxic event that occurred prior to those new evaluations. In sum, the petition and materials supporting it alleged that his dementia had progressed rapidly in the six months since the evidentiary hearing and that his competency was again in doubt. He asked the district court to hold another evidentiary hearing and stay his execution until his competency was decided again.

¶5    Two days after Menzies filed his petition to reevaluate his competency, the district court issued a warrant of execution, setting an execution date of September 5, 2025. Menzies also filed two

_____

[3] *Madison*, 586 U.S. at 269 (cleaned up).

petitions for extraordinary relief, asking us to vacate his execution warrant and stay his execution while we considered his pending appeal and any appeal related to his petition for reevaluation. About a month after issuing the warrant of execution, the district court denied Menzies's reevaluation petition, ruling that Menzies had not demonstrated a substantial change of circumstances and that his new evidence did not raise a significant question about his competency to be executed (order denying reevaluation).[4] Menzies appealed that order too.

¶6 We begin our analysis by confirming our appellate jurisdiction over the two competency appeals. We then work through the constitutional standard governing competency to be executed: that a petitioner have a "rational understanding of the reason for his execution."[5]

¶7 Next, we review the order denying reevaluation. To reopen competency proceedings, a successive competency petition must make a prima facie showing of "a substantial change of circumstances" that is "sufficient to raise a significant question about the inmate's competency to be executed."[6] We conclude that the district court erred in accepting and weighing rebuttal evidence from the State rather than evaluating only whether Menzies made that threshold showing. And based on the evidence presented, we conclude that the district court also erred in concluding that Menzies failed to demonstrate a substantial change of circumstances or to raise a significant question as to his competency. So we reverse the order denying reevaluation and remand for further proceedings.

¶8 Given our resolution of the appeal of the order denying reevaluation, the appeal of the first competency order is moot. Menzies's second extraordinary writ petition is also moot. Turning to Menzies's appeal of the denial of his disqualification motion, which he included within his appeal of the first competency order,

---

[4] *See* UTAH CODE § 77-19-203(5). We note that the legislature made a nonsubstantive change to subsection 203 during the 2025 legislative session, but that change has no bearing on our analysis here.

[5] *Madison*, 586 U.S. at 268 (cleaned up) (quoting *Panetti*, 551 U.S. at 958).

[6] UTAH CODE § 77-19-203(5).

we do not consider it. And finally, in response to Menzies's first extraordinary writ petition, we vacate the execution warrant.

## BACKGROUND

¶9    In 1988, Menzies was convicted of the murder of Maurine Hunsaker and was sentenced to death. We have considered the facts of the case at length in other opinions and need not recite them again today.[7]

¶10  In November 2023, Menzies was diagnosed with vascular dementia, which is a neurocognitive disorder that progressively worsens over time. Its diagnosis is based on observations of impediments to daily living and neuropsychological testing. The impediments and cognitive functioning get worse, with some periods of stability, followed by sharp drops in cognitive ability.

¶11  In early 2024, the State applied for an execution warrant to carry out Menzies's death sentence. Menzies then filed a petition for a competency hearing, asserting that the Eighth Amendment prevented his execution because of his progressive vascular dementia. The district court stayed the execution proceedings pending the competency inquiry. The parties conducted discovery and performed examinations for most of 2024.

¶12  During the discovery period, Menzies filed a motion to disqualify the Attorney General's Office from representing the State in the competency proceedings, alleging that the office's conflicts of interest violated his constitutional rights. The district court denied the motion.

¶13  In November and December 2024, the district court heard evidence on the issue of competency from seven expert examiners—two appointed by the Utah Department of Health and Human Services, two others called by the State, and three more called by Menzies. On June 6, 2025, the district court issued its findings of fact, conclusions of law, and order based on the evidence taken at the hearing. The court concluded that although it was undisputed that Menzies suffers from vascular dementia, he was nevertheless competent to be executed.

---

[7] *See generally Menzies v. State*, 2014 UT 40, 344 P.3d 581; *Menzies v. Galetka*, 2006 UT 81, 150 P.3d 480; *State v. Menzies*, 889 P.2d 393 (Utah 1994); *State v. Menzies*, 845 P.2d 220 (Utah 1992); *see also Menzies v. Powell*, 52 F.4th 1178 (10th Cir. 2022).

¶14 The court found all the experts to be credible, affirmed that brain imaging showed changes to Menzies's brain tissue, and recognized a decline in his cognitive function and ability to conduct activities of daily living. But the court also noted that dementia exists on a spectrum. It concluded, based on some of the expert evaluations and recorded phone conversations presented by the State, that Menzies could still rationally understand the reasons for his death sentence. Menzies appealed that first competency order and sought expedited briefing before this court.

¶15 About a month after the district court entered its first competency order, Menzies filed a petition to reevaluate his competency, asserting that he had experienced significant physical and mental decline since his original competency hearing. He alleged it had been eight months or more since he was evaluated for the first competency hearing, and that since then he had significantly declined in physical and cognitive abilities and that, based on new evaluations, he no longer had the rational capacity to understand the connection between the crime and his punishment.

¶16 Two days later, the court issued an execution warrant. Menzies then filed a petition for an extraordinary writ, asking this court to vacate the execution warrant and to stay further execution proceedings while his appeal and petition to reevaluate competency are pending.

¶17 The district court heard argument on the petition to reevaluate competency. Menzies then filed another extraordinary writ petition, seeking a stay of execution until the district court issued its order and Menzies had an opportunity, if necessary, to appeal that order. The district court later denied the petition to reevaluate competency, which Menzies promptly appealed.

## ANALYSIS

I.   WE HAVE JURISDICTION TO HEAR MENZIES'S APPEALS FROM BOTH THE DISTRICT COURT'S FIRST COMPETENCY ORDER AND ITS ORDER DENYING REEVALUATION

¶18 The State first asks us to review our jurisdiction to consider Menzies's appeals of the first competency order and the order denying reevaluation. It argues Menzies does not have a right to appeal the competency orders because his original sentence, entered in 1988, constituted the final judgment, and no statute

grants him the express authority to appeal the orders.[8] We disagree.

¶19 Here, Utah Code subsection 77-18a-1(1)(b) grants Menzies express authority to appeal the district court's competency orders. That provision states, "A defendant may, as a matter of right, appeal from . . . an order made after judgment that affects the substantial rights of the defendant."[9] An order deeming a defendant competent to be executed or denying a reevaluation of competency undoubtedly "affects the substantial rights of the defendant." The Eighth Amendment prohibits a state from executing "one whose mental illness prevents him from comprehending the reasons for the penalty or its implications."[10] An order rejecting a claim of incompetency to be executed thus implicates the defendant's constitutional right to be free from cruel and unusual punishments.[11]

¶20 The State argues that, in the same statute, the legislature expressly gave the State the right to "appeal an order finding a defendant incompetent to be executed,"[12] but the statute grants a defendant "no corresponding right to appeal an order finding him competent to be executed." That "precise exclusion," the State argues, "should control over any broad reading of 'substantial

---

[8] Although the parties cannot confer jurisdiction on the court by agreement, *see Phx. Indem. Ins. Co. v. Smith*, 2002 UT 49, ¶ 5. 48 P.3d 976, we note that at a hearing before the district court the State conceded that Menzies has a right of direct appeal from at least the district court's first competency order. In response to the district court's question of whether Menzies had a right of direct appeal from the competency order, Mr. Boyer on behalf of the State responded, "[H]e can appeal it directly to the Supreme Court, yes. And that's what—that's what he's done. He's filed a notice of appeal in the Utah Supreme Court. . . . He gets to appeal this court's competency determination." The State also concedes that even if we lack jurisdiction over the orders as direct appeals, we may entertain them under our extraordinary writ jurisdiction.

[9] UTAH CODE § 77-18a-1(1)(b).

[10] *Ford v. Wainwright*, 477 U.S. 399, 417 (1986).

[11] *See* UTAH CODE § 77-18a-1(1)(b).

[12] (Citing *id.* § 77-18a-1(3)(i).)

rights'" that would grant a defendant an appeal of a competency order as of right. Again, we disagree.

¶21 This is not a situation where the specific controls over the general, as the State contends.[13] In that situation, "when two statutory provisions conflict in their operation, the provision more specific in application governs over the more general provision."[14] But the two provisions the State points to here are not in conflict. We may not read the legislature's explicit and narrow grant of the State's right to appeal as overriding the legislature's explicit and broad grant of a right to appeal to a criminal defendant. As we have previously recognized, the State's right to appeal is limited relative to the broad appeal rights granted to defendants.[15] We thus conclude that we have jurisdiction to hear Menzies's appeals from the district court's competency order and order denying reevaluation.

II. THE EIGHTH AMENDMENT BARS EXECUTION OF A PETITIONER WHO LACKS A RATIONAL UNDERSTANDING OF THE STATE'S REASON FOR EXECUTING HIM

¶22 Having confirmed our jurisdiction, we turn to the merits of Menzies's appeals. We start by reviewing the rational understanding test laid out by the United States Supreme Court for evaluating competency in this context.

¶23 Over the last forty years, the Supreme Court has explained that the Eighth Amendment protects incompetent individuals from execution. In *Ford v. Wainwright*, the Supreme Court established that "the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane."[16] Competency-

---

[13] (Citing *Flowell Elec. Ass'n v. Rhodes Pump, LLC*, 2015 UT 87, ¶ 10, 361 P.3d 91.)

[14] *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958.

[15] *See State v. Harrison*, 2011 UT 74, ¶¶ 8–9, 269 P.3d 133 (noting that "[i]n criminal cases, the prosecution's statutory right to appeal is limited" to "specifically enumerated judgments or orders"); *cf. State v. Clark*, 2011 UT 23, ¶ 6, 251 P.3d 829 (explaining that "criminal defendants have the right to appeal in all cases" (cleaned up)).

[16] 477 U.S. 399, 409–10 (1986) (plurality opinion); *see also id.* at 418–22 (Powell, J., concurring).

to-be-executed challenges ripen when execution is "imminent" because a petitioner must be competent at the time of the execution.[17]

¶24 Building on its holding in *Ford*, the Supreme Court articulated in *Panetti v. Quarterman* and *Madison v. Alabama* that competency turns on "whether a prisoner can reach a rational understanding of the reason for his execution."[18] Stated differently,

> The critical question is whether a prisoner's mental state is so distorted by a mental illness that he lacks a rational understanding of the State's rationale for his execution. Or similarly put, the issue is whether a prisoner's concept of reality is so impaired that he cannot grasp the execution's meaning and purpose or the link between his crime and its punishment.[19]

Incompetency can arise from a variety of mental illnesses, including conditions like vascular dementia.[20] What matters most in evaluating competency to be executed is not the specific diagnosis at issue, but its "downstream consequence[s]"—the ultimate effect it has on a petitioner's ability to rationally understand the State's reasons for his or her execution.[21]

---

[17] *Panetti v. Quarterman*, 551 U.S. 930, 946–47 (2007); *see also Stewart v. Martinez-Villareal*, 523 U.S. 637, 644–45 (1998) (noting that "competency to be executed could not be determined" when "execution was not imminent").

[18] *Madison v. Alabama*, 586 U.S. 265, 268 (2019) (cleaned up); *see also Panetti*, 551 U.S. at 958.

[19] *Madison*, 586 U.S. at 269 (cleaned up). In the specific context of dementia, the *Madison* Court stated, "[Dementia] can cause such disorientation and cognitive decline as to prevent a person from *sustaining* a rational understanding of why the State wants to execute him." *Id.* at 279 (emphasis added). Because Menzies also suffers from a form of dementia, and in light of the Court's direction to pay particular attention to the facts and circumstances of each individual and their mental illness, *see id.*, we also find that alternative framing of the standard instructive.

[20] *See id.* at 278–79.

[21] *Id.* at 279.

¶25   The Supreme Court has repeatedly acknowledged that the rational understanding standard is somewhat vague and requires a fact-intensive test.[22] Given the test is a fact-specific inquiry, "[t]he conclusions of physicians, psychiatrists, and other experts in the field will bear upon the proper analysis."[23] Here, all parties agree that Menzies suffers from vascular dementia. At issue in the competency proceedings is only whether Menzies's vascular dementia prevents him from having a rational understanding of the State's reasons for executing him.[24] We next turn to his competency proceedings.

III. THE DISTRICT COURT ERRED IN DENYING MENZIES'S PETITION FOR REEVALUATION

¶26   Having outlined the constitutional standard for evaluating competency to be executed, we turn now to the threshold requirements for a petition to reevaluate competency. Menzies argues that the district court misinterpreted what legal standard applies to a successive competency petition and that it erred in concluding that Menzies failed to meet his burden to reopen his competency proceedings. We agree on both counts.

¶27   We begin by reviewing the statutory framework for competency-to-be-executed proceedings. We then apply that framework to Menzies's case and hold that the district court erred in denying Menzies's petition for reevaluation. We review the district court's interpretation of statutes for correctness.[25] We also review prima facie determinations for correctness.[26]

---

[22] *See Panetti*, 551 U.S. at 959–61 (noting that "a concept like rational understanding is difficult to define" and declining to "set down a rule governing all competency determinations"); *Madison*, 586 U.S. at 279 (holding that the Eighth Amendment requires a court to "attend to the particular circumstances of a case and make the precise judgment *Panetti* requires").

[23] *Panetti*, 551 U.S. at 962.

[24] *See Madison*, 586 U.S. at 268.

[25] *State v. Cooke*, 2025 UT 6, ¶ 19, 567 P.3d 541.

[26] *State v. Clara*, 2024 UT 10, ¶ 30, 546 P.3d 963.

A. *Utah Code Subsection 77-19-203(5) Requires a Petitioner to Make a Prima Facie Showing to Reopen Competency Proceedings*

¶28 Utah Code sections 77-19-201 through -205 lay out the statutory procedures for evaluating a petitioner's competency to be executed. Most relevant here, section 77-19-203 outlines the requirements for a petition to initiate competency proceedings and section 205 adds additional requirements for successive petitions made after the petitioner has previously been found competent. Menzies argues the district court erred by misinterpreting its role under the statute. When we interpret statutory text, our goal "is to ascertain the intent of the legislature, the best evidence of which is the plain language of the statute itself."[27]

¶29 Subsection 77-19-203(1) provides, "If an inmate who has been sentenced to death is or becomes incompetent to be executed, a petition . . . may be filed in the district court of the county where the inmate is confined."[28] Subsection (2)(a) requires that the petition must be filed "in good faith" and based "on reasonable grounds to believe the inmate is incompetent to be executed."[29] And subsection (2)(b) states the petition must "contain a specific recital of the facts, observations, and conversations with the inmate that form the basis for the petition."[30] Under subsection (3), the petition "may be based upon knowledge or information and belief and may be filed by the inmate . . . , legal counsel for the inmate, or by an attorney representing the state."[31] Subsection (4) instructs that, after receiving a petition, "the court shall give the state and the Department of Corrections an opportunity to respond to the allegations of incompetency."[32]

¶30 Subsection (5) provides a path for reopening competency proceedings after a district court has found an inmate competent to be executed. Under that provision, "no further hearing on competency may be granted" based on a successive petition unless

---

[27] *State v. Miller*, 2023 UT 3, ¶ 65, 527 P.3d 1087 (cleaned up).

[28] UTAH CODE § 77-19-203(1).

[29] *Id.* § 77-19-203(2)(a).

[30] *Id.* § 77-19-203(2)(b).

[31] *Id.* § 77-19-203(3).

[32] *Id.* § 77-19-203(4).

that petition "(a) alleges with specificity a substantial change of circumstances subsequent to the previous determination of competency; and (b) is sufficient to raise a significant question about the inmate's competency to be executed."[33]

¶31 The statutory language of section 77-19-203 suggests that the general requirements laid out in subsections (1) through (4) apply to both an initial competency petition and a successive petition. Subsection (1) states that if a petitioner facing the death penalty becomes incompetent, "a petition . . . may be filed."[34] Subsections (2) through (4) mirror that language, speaking in terms of "the petition" or "a petition."[35] The statute then discusses successive competency petitions: "If a petition is filed after" an initial finding of competency, "no further hearing on competency may be granted unless the successive petition" "alleges with specificity a substantial change of circumstances" and "is sufficient to raise a significant question about the inmate's competency to be executed."[36] A successive petition is referred to as "a petition," echoing the language of subsection 77-19-203(1). We read that to mean that a successive petition is a subset of the competency petitions discussed in subsection (1) and is thus subject to the statutory requirements in subsections (2) through (4), in addition to those in subsection (5).

¶32 The parties debate how much evidence, if any, must accompany the allegations in a successive petition. Subsections (2), (3), and (5) answer this question. A successive petition must "allege[] with specificity a substantial change of circumstances" and must be "sufficient to raise a significant question about the inmate's competency to be executed."[37] The petition must "contain a specific recital of the facts, observations, and conversations with the inmate that form the basis for the petition."[38] And statements in the petition "may be based upon knowledge or information and

---

[33] *Id.* § 77-19-203(5).

[34] *Id.* § 77-19-203(1).

[35] *Id.* § 77-19-203(2)–(4).

[36] *Id.* § 77-19-203(5).

[37] *Id.*

[38] *Id.* § 77-10-203(2)(b).

belief."[39] Taken together, we interpret these provisions to require a successive petition to include specific factual allegations. The provisions nowhere require that the petition contain supporting evidence, though a petitioner may opt to enclose supporting exhibits to support his prima facie showing.

¶33  The parties also dispute the State's role in responding to a successive petition. Subsection (4) requires a court to "give the state and the Department of Corrections an opportunity to respond to the allegations of incompetency" before it rules on a petition.[40] Like the other subsections, that provision does not mention evidence—only the opportunity to respond. Thus the State may present argument that a successive petition does not meet the statutory threshold, but the statute does not permit the State to introduce evidence to rebut the petitioner's initial showing.[41] That reading is bolstered by the fact that a court may not grant a competency hearing on a successive petition "unless the successive *petition . . .* alleges with specificity a substantial change of circumstances" and "is sufficient to raise a significant question about the inmate's competency to be executed."[42] The plain language suggests that the court must rule on the basis of the showing in the petition, not on the basis of any weighing of contrary evidence.

¶34 A district court reviewing a successive competency petition is performing a gatekeeping function—determining whether a petitioner has made a prima facie showing that the court should hold another competency hearing. It is not deciding on the

---

[39] *Id.* § 77-19-203(3).

[40] *Id.* § 77-19-203(4).

[41] *See id.*; *see also id.* § 77-19-203(5) (focusing a court's analysis on whether the successive petition itself meets the two statutory standards); *cf. Oakwood Vill. LLC v. Albertsons, Inc.*, 2004 UT 101, ¶ 8, 104 P.3d 1226 ("A [r]ule 12(b)(6) motion to dismiss admits the facts alleged in the complaint but challenges the plaintiff's right to relief based on those facts. . . . [O]ur inquiry is concerned solely with the sufficiency of the pleadings, and not the underlying merits of the case." (cleaned up)).

[42] UTAH CODE § 77-19-203(5) (emphasis added).

merits whether the petitioner is actually competent.[43] So long as the petition—including specific allegations and any supporting materials—shows a substantial change in circumstances and raises a significant question about competency, the district court must grant a "further hearing on competency."[44] The district court must accept the specific allegations in the petition as true in making that threshold determination. Here, rather than look to the petition alone, the court reevaluated competency by weighing the allegations and supporting materials against a number of recorded phone calls submitted by the State. To do so at this prima facie stage was error.

### B. *The District Court Erred in Concluding That Menzies Failed to Meet His Burden to Make a Prima Facie Showing*

¶35   Reviewing the district court's order denying reevaluation under this framework, we hold that the court erred in concluding that Menzies failed to meet his burden to reopen competency proceedings. Because we evaluate prima facie determinations for correctness, we determine whether Menzies made a prima facie showing without deference to the district court's conclusions.[45]

¶36 Under Utah Code subsection 77-19-203(5), a petitioner makes a prima facie showing if "the successive petition: (a) alleges with specificity a substantial change of circumstances subsequent to the previous determination of competency; and (b) is sufficient to raise a significant question about the inmate's competency to be executed."

¶37 We first consider whether Menzies's allegations established a substantial change of circumstances. The district court's order highlighted a timing issue that we address briefly

---

[43] If a court grants a successive competency petition, Utah Code section 77-19-204 lays out the evaluation process and the requirements for the hearing. At the hearing, "[a]n inmate shall be presumed competent to be executed unless the court, by a preponderance of the evidence, finds the inmate incompetent to be executed. The burden of proof is upon the proponent of incompetency at the hearing." *Id.* § 77-19-204(9)(a). But that framework does not apply until the petitioner has cleared the initial hurdle in subsection 77-19-203(5).

[44] *Id.* § 77-19-203(5).

[45] *See State v. Clara*, 2024 UT 10, ¶ 30, 546 P.3d 963.

before getting to the core of the court's ruling. The court noted that subsection 77-19-203(5)(a) "explicitly requires the change of circumstances to have occurred *subsequent to the previous determination of competency*." And the court was concerned that "almost all of Menzies's decline alleged in the successive petition occurred *prior* to the Court's initial determination of competency" in an order issued on June 6, 2025.

¶38 Regardless of when Menzies's most significant decline occurred—which may be impossible to pinpoint or prove with respect to his progressive condition—it is undisputed that the petition alleges specific facts that arose after the court's first competency order. Most relevant to our analysis, Menzies's petition to reevaluate competency relied on two expert reports: one from Dr. Lynette M. Abrams-Silva, based on a new evaluation on June 27, 2025 and one from Dr. Thomas M. Hyde, based on a new evaluation on June 30, 2025. The petition alleges that, during those evaluations, Menzies exhibited signs of decline that provided ample support for his claimed post-competency-order change of circumstances, even without considering the alleged pre-competency-order decline. Because we conclude that Menzies makes a prima facie case of incompetency based solely on changes in circumstances allegedly observed at the post-competency-order evaluations, we consider only those factual allegations here. We reserve for another day the statutory interpretation question of whether a change of circumstance that arose prior to an initial competency order could sustain a subsequent petition.

¶39 Looking to Menzies's petition and proffered evidence, we conclude that he "allege[d] with specificity a substantial change of circumstances."[46] In their June 2025 reports, Dr. Hyde and Dr. Abrams-Silva stated they no longer believed that Menzies had an awareness of the connection between his execution and his murder of Maurine Hunsaker. Experts had previously testified that Menzies had an awareness of this causal link between his conviction and his impending punishment. These new allegations establish a "substantial change."

¶40 Previously, even though Menzies maintained his innocence, he could articulate that he was in prison for the murder of Maurine Hunsaker. When Dr. Abrams-Silva asked about the charges associated with Menzies's death sentence in her initial

---

[46] UTAH CODE § 77-19-203(5)(a).

evaluations, Menzies reportedly responded that he was "charged with capital homicide that I didn't do." In her new report, Dr. Abrams-Silva reported that Menzies responded to similar questioning by stating, "They don't tell me all the details."

¶41 Dr. Hyde similarly reported that on June 30, 2025, when asked why he had been sentenced to death, Menzies answered, "I don't know." When queried about the State's official reason for executing him, he replied, "Because they want to. I don't think there is an official explanation." These statements, accepted as true, mark a substantial change in circumstances for Menzies and establish the first prong of Menzies's prima facie case.

¶42 To make a prima facie showing, Menzies also needed to "raise a significant question about [his] competency to be executed,"[47] and the allegations he made through the submission of expert reports meet that threshold showing. In his report, Dr. Hyde explained that he asked Menzies "a series of questions to assess Mr. Menzies's understanding of the connection between his crime and punishment, but at no point, even with questions intending to cue correct answers, was he able to articulate a basic awareness that his impending execution was linked to the facts of his offense." Based on their interactions, Dr. Hyde concluded that "Mr. Menzies no longer possesses an awareness of why he is to be executed."

¶43 Dr. Abrams-Silva had a similar experience. When she asked Menzies about the outcome of his most recent court visit, he stated, "It means they tell me bye-bye." She explained that when "asked multiple times, rephrased in different ways, to elaborate on this, he could not, and only repeated that the next step was to be told 'bye-bye.'" Based on the whole of her interview, Dr. Abrams-Silva ultimately concluded that Menzies's newly progressed "cognitive deficits have rendered him incapable of forming a rational understanding or maintaining a factual understanding of the link between his crime and its punishment."

¶44 The district court minimized these expert reports, deeming their statements "conclusory." The court took issue with the fact that "[t]he examiners did not include which questions were asked of Menzies and what his answers, if any, were. Dr. Hyde explained

---

[47] *See id.* § 77-19-203(5)(b).

that he cued correct answers in his questioning, but did not provide what cues he used." We disagree.

¶45 Both expert reports provided specific allegations, including "a specific recital of the facts, observations, and conversations with the inmate that form the basis for the petition."[48] Dr. Abrams-Silva's report included a table listing at least three questions she had asked over the course of four examinations and included Menzies's verbatim answers. And Dr. Hyde included several paraphrased questions he asked, along with several verbatim answers to the questions most relevant to Menzies's competency. That is enough detail at this stage to meet Menzies's burden. As long as the petition, inclusive of its attached reports and any other materials provided with the petition, met both of the criteria of Utah Code subsection 77-19-203(5) — which it did here — the district court should have set another competency proceeding. Then, at an evidentiary hearing, both parties could present their full evidence, as was done in the first competency proceeding.

¶46 Under the "rational understanding" standard we articulated above,[49] both expert reports raise serious and significant questions about whether Menzies is competent to be executed. *Madison* dictates that a petitioner must be able to understand "the link between his crime and its punishment."[50] The statements by both Dr. Hyde and Dr. Abrams-Silva, taken as true, suggest that Menzies can no longer understand that causal connection. For the district court to weigh the evidence and conclude otherwise at this stage was error.

¶47 Menzies's petition adequately alleged a substantial change of circumstances and raised a significant question as to his competency to be executed. It thus made the prima facie showing required under Utah Code subsection 77-19-203(5). We reverse the district court's order denying reevaluation and remand for further competency proceedings.

---

[48] *See id.* § 77-19-203(2)(b); *supra* ¶¶ 38–43.

[49] *See supra* ¶¶ 22–25.

[50] *Madison v. Alabama*, 586 U.S. 265, 269 (2019) (cleaned up).

IV. ONE APPEAL AND ONE PETITION FOR EXTRAORDINARY RELIEF ARE NOW MOOT AND WE DO NOT CONSIDER THE MOTION TO DISQUALIFY THE STATE'S COUNSEL IN THE FIRST COMPETENCY PROCEEDING

¶48 Our decision to reverse the order denying reevaluation and to remand this matter for a new competency evaluation leaves one of Menzies's pending appeals and one of his petitions for extraordinary relief moot. An appeal is moot if "during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect."[51]

¶49 First, Menzies's appeal of the first competency order is moot. Having ordered that Menzies's competency must be reevaluated, a decision to affirm or reverse the order issued after his first competency proceeding would have no legal effect.

¶50 Second, one of Menzies's petitions for extraordinary relief asked that we stay his execution until the district court ruled on his then-pending petition to reevaluate his competency. He also asked us to continue that stay pending the outcome of any appeal of that order. The district court subsequently issued the order denying reevaluation, and we resolve today the merits of Menzies's appeal of that order. That petition for extraordinary relief is now also moot.

¶51 We also decline Menzies's request that we consider the district court's order denying his motion to disqualify the Attorney General's Office, which was decided during the first competency proceeding.[52] Menzies briefed this issue with his appeal of the first competency order. Even assuming Menzies had a right to appeal the disqualification order as part of his appeal of the first competency order, his notice of appeal specifically identified only the first competency order as the order being appealed. It did not include the order denying the motion to disqualify. Rule 3 of the Utah Rules of Appellate Procedure requires all orders being

---

[51] *Utah Transit Auth. v. Loc. 382 Amalgamated Transit Union*, 2012 UT 75, ¶ 14, 289 P.3d 582 (cleaned up).

[52] *See supra* ¶ 12.

appealed to be included in the notice of appeal.[53] And that requirement is jurisdictional.[54]

¶52 Further, assuming Menzies did not have the right to appeal the disqualification order as part of his appeal of the first competency order, to consider the disqualification issue we would need to exercise our discretionary authority to grant extraordinary relief.[55] Under those circumstances, we would decline to exercise that discretion because of the delay in seeking review of the interlocutory disqualification order.[56]

## V. WE VACATE THE WARRANT OF EXECUTION

¶53 Our final task is to address the petition for extraordinary relief that asks us to vacate the execution warrant issued on July 9, 2025. When reviewing extraordinary writ requests, we limit our review "to determining whether the trial court has regularly pursued its authority and has not abused its discretion."[57] A district court can abuse its discretion in various ways, including when it applies the wrong legal standard or misapplies the law.[58]

¶54 The requirements for a district court to enter an execution warrant are prescribed in Utah Code subsection 77-19-9(2): "When the defendant is brought before the court, it shall inquire into the facts and, if no legal reason exists against the execution of judgment, the court shall make an order requiring . . . that the judgment is executed on a specified day . . . ."

¶55 Menzies asserts that two legal reasons existed that should have precluded issuance of the warrant of execution: (1) an appeal was pending (his appeal of the first competency order) and (2) a petition for other relief was pending (his petition to reevaluate his

---

[53] UTAH R. APP. P. 3(a), (d)(2).

[54] *Jensen v. Intermountain Power Agency*, 1999 UT 10, ¶ 7, 977 P.2d 474; *see also Pulham v. Kirsling*, 2019 UT 18, ¶ 27, 443 P.3d 1217 (determining that appellate jurisdiction was limited when the notice of appeal identified only "specific portions" of the decree).

[55] *See Gilbert v. Maughan*, 2016 UT 31, ¶¶ 15–18, 379 P.3d 1263.

[56] *See id.* ¶ 18 (noting that delays may weigh heavily against granting extraordinary relief).

[57] *State v. Gardner*, 2010 UT 44, ¶ 3, 234 P.3d 1104 (per curiam).

[58] *State v. Boyden*, 2019 UT 11, ¶ 19, 441 P.3d 737.

competency). In support of his position, he argues that these pending proceedings should have resulted in an automatic stay of any execution proceedings.[59] We decline to consider whether Menzies was entitled to an automatic stay and instead decide this petition based only on an analysis of whether "legal reason[s] exist[ed] against the execution of judgment" on July 9, 2025.[60]

¶56  We conclude that legal reasons did exist on that date that should have stopped the court from issuing a warrant of execution. Menzies had a pending appeal and a pending petition for reevaluation contending that he was incompetent and could not be executed under the Eighth Amendment. On July 9, the district court held a hearing on the State's request for a warrant of execution. At that hearing, the State agreed with the district court that Menzies had a right to directly appeal the court's competency order and that his appeal was pending.

¶57  As we concluded above,[61] Menzies had a direct right to appeal the first competency order as a post-judgment order "that affects [his] substantial rights."[62] His constitutional right not to be executed if he is incompetent is unquestionably a "substantial right."[63] The petition to reevaluate his competency—also pending on July 9, 2025—involved the same substantial right: his right to avoid execution if he is incompetent. While Menzies had pending proceedings that affected his substantial rights, it was legal error for the district court to issue the warrant of execution.

¶58 The State argues that our opinion in *State v. Gardner* prohibits this conclusion.[64] In *Gardner*, we also reviewed an extraordinary writ petition challenging the issuance of an execution warrant.[65] We interpreted Utah Code subsection 77-19-9(2) to mean

---

[59] (Citing UTAH R. CRIM. P. 27(a)(1).)

[60] *See* UTAH CODE § 77-19-9(2).

[61] *Supra* ¶¶ 18–21.

[62] UTAH CODE § 77-18a-1(1)(b).

[63] *See generally Madison v. Alabama*, 586 U.S. 265 (2019); *Panetti v. Quarterman*, 551 U.S. 930 (2007); *Ford v. Wainwright*, 477 U.S. 399 (1986).

[64] *See generally* 2010 UT 44.

[65] *Id.* ¶ 1.

that the trial court was required to "review only the procedural status of the case and to determine that no direct or collateral attacks on the judgment are pending, that no stays are in effect, and that there are no procedural defects in the warrant application process" before issuing an execution warrant.[66] We rejected Gardner's argument that "the trial court erred in declining to consider claims going to the validity of his death sentence as 'legal reasons'" not to issue the warrant.[67] And though we did not articulate explicitly what type of claims Gardner raised, we held that the statute does not permit review of substantive claims that the underlying sentence is invalid "such as those raised . . . by Mr. Gardner."[68] Unlike Gardner, Menzies does not raise claims going to the validity of his death sentence.

¶59 A competency-to-be-executed challenge is not a direct or collateral attack on the underlying judgment, sentence, or conviction.[69] Rather, a competency-to-be-executed challenge brought under *Ford* and its progeny questions whether a petitioner can constitutionally be executed, based on the petitioner's alleged incompetency at a particular point in time, when execution is imminent.[70] Other types of mental incompetency claims involve permanent incompetency and may result in vacating a death sentence.[71] A *Ford* challenge may result in a long-lasting stay, but it

---

[66] *Id.* ¶ 3.

[67] *Id.* ¶ 1 (quoting UTAH CODE § 77-19-9 (2008)).

[68] *Id.* ¶ 3.

[69] Menzies has at times asked us to declare him incompetent and vacate or void his sentence altogether. For the reasons articulated here, *see infra* n.71, we decline to do so.

[70] *See Madison*, 586 U.S. at 268.

[71] Menzies brought his claim under *Ford* and its progeny. He did not bring his claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), which other courts have construed as the vehicle to address permanent incompetency resulting in a need to vacate a death sentence. *See, e.g.*, *Busby v. Davis,* 925 F.3d 699, 713 (5th Cir. 2019) ("Incompetence may occur at various points after conviction, and it may recede and later reoccur. A finding that an inmate is incompetent to be executed does not foreclose the possibility that she may become competent in the future and would no longer be

(continued . . .)

does not result in vacatur.[72] This is a fine and narrow distinction but a significant one.

¶60 The district court recognized the same in its order: "If a defendant is found to be incompetent, either by a lower court or an appellate court, the death sentence is not vacated. . . . [T]he judgment of death remains in force. This is so even if a defendant never regains competency." Unlike the claims raised in *Gardner*, we conclude that a pending competency proceeding, including an appeal of a competency determination, is a legal reason that should prevent issuance of an execution warrant.[73]

¶61 In sum, when the district court issued the July 9, 2025 warrant of execution, Menzies had a pending petition asserting his incompetency to be executed under the Eighth Amendment and a pending appeal of an order declaring him to be competent. Those pending proceedings affected Menzies's substantial rights and constituted a legal reason not to issue the execution warrant.[74] The

---

constitutionally ineligible for the death penalty. By contrast, intellectual disability is by definition a permanent condition . . . . A person who is found to be intellectually disabled is permanently ineligible to be executed, and the sentence of death is vacated." (footnote omitted)). We do not consider whether Menzies's vascular dementia is permanent incompetency in this appeal since his competency proceedings were brought only under *Ford*, *Panetti*, and *Madison*.

[72] *See* UTAH CODE § 77-19-202; *see also Busby*, 925 F.3d at 713.

[73] Both the district court and the State also maintain that the execution warrant was proper under our unpublished order in *Honie v. Wilcox*. *Honie* is neither binding nor on point. *See Essential Botanical Farms, LC v. Kay*, 2011 UT 71, ¶ 19, 270 P.3d 430 ("[U]npublished opinions from this court may be cited for their persuasive value, [but] they are not binding on this court." (citing UTAH R. APP. P. 30(f))). While the order in *Honie* is sparse and does not identify the nature of Honie's appeal, the parties acknowledge in briefing and oral argument that the pending appeal in that case was a separate civil challenge to the method of execution. This case is presented differently.

[74] *See* UTAH CODE § 77-19-9(2).

petition for extraordinary relief is granted, and we vacate the July 9, 2025 warrant of execution.

## CONCLUSION

¶62 Menzies's vascular dementia and its progressive effects call into question whether he remains competent to be executed. We acknowledge that this uncertainty has caused the family of Maurine Hunsaker immense suffering, and it is not our desire to prolong that suffering. But we are bound by the rule of law, and the law dictates that if Menzies makes a prima facie showing of a substantial change of circumstances that raises a significant question about his competency to be executed, a district court must reevaluate his competency, even though it may cause additional delay.[75]

¶63 We hold that Menzies's petition for reevaluation made a prima facie showing that requires the district court to reevaluate his competency. We reverse the district court's order denying Menzies's petition for reevaluation, vacate the warrant of execution and remand to the district court for further proceedings.

--------

[75] *Cf. Ford v. Wainwright*, 477 U.S. 399, 429 (1986) (O'Connor, J., concurring in the result in part and dissenting in part) ("Regardless of the number of prior adjudications of the issue, until the very moment of execution the prisoner can claim that he has become insane sometime after the previous determination to the contrary."); *id.* at 435 (Rehnquist, J., dissenting) ("A claim of insanity may be made at any time before sentence and, once rejected, may be raised again; a prisoner found sane two days before execution might claim to have lost his sanity the next day, thus necessitating another judicial determination of his sanity and presumably another stay of his execution.").